Please the court, Your Honor. I'm Karen Landau and I pronounce it Nikulin, but I could be wrong too. Are we ready? Okay. I think Ms. King's on and so I think we're ready to proceed. Okay. Again, may it please the court, I'd like to reserve three minutes for rebuttal and I will watch my time. Today, I'd like to start by focusing on the issue of restitution and the related question of laws. The fundamental problem with the restitution order in this case is that there's simply an inadequate foundation to determine what the victim's losses were. The evidence that was presented to the district court consists of letters. They're not sworn, although that alone may not be a bar, but we have four unsworn letters that claim a total damage and list generally the type of things that the damages are based on and they don't even have any kind of factual basis for an estimate. For example, well, there is one, the lowest one, Formspring said that they spent about, they expended approximately 300 employee hours, but there's no indication of employee salaries, whether annual, monthly, or hourly. There's no breakdown. There's references. So that's the fundamental problem here, is that what was submitted to the district court is akin to the general invoices that were submitted in Wachneen. So Nicolin, if I'm remembering this correctly, he didn't raise this issue in his objections to the argument for plain error? No, Your Honor. He, so at trial, the government, and I don't fault the government for this, at trial, the statutory requirement is a statutory requirement of damages that's $5,000 per count. And the government presented testimony that was sworn that as to each of the corporate victims, the three about which testimony was presented, there was at least $5,000 worth of damage. So that's the, that's what was proven at trial. And the government also presented testimony about loss. And there was testimony about war rooms and the amount of, you know, how many employees and, you know, the significance of the breaches. But there was no testimony about what that costs beyond $5,000. And again, that's what government had to do. Now, it's sentencing, actually, there were objections, there were objections at length. And it's contained at... Well, I saw objections to the loss amount, but I didn't see objections to restitution. I only saw one sentence where the defense counsel said, I've seen a lot of restitution hearings, and a lot of loss amount hearings. That's the only reference to restitution I saw in the, in the transcript. Was there any specific argument about the restitution order or only about the loss amount? So you're right, defense counsel treated loss and restitution as interchangeable. But he did complain, but the the I would point out that the the error complained of, which is that there's a lack of factual substantiation, a lack of any kind of evidence is the same. And in fact, I would also point out, the government did not argue that this is reviewable for plain error. So I would say that it is pretty clearly reviewable for harmless error. The well, it's, it's just, it's, I guess it's reviewable. I mean, depending on the standard, I would argue that the restitution order is reviewable de novo, because the court so statute. Um, the related problem with the restitution order is that the victim letters on which the restitution order is based, are they some of them at least include items for which restitution may or may not be available. The government has argued in its in its answering brief that all of the restitution was ordered under subdivision B one, which goes to the, you know, the damages caused by the, the debate, the conviction that's come from the conviction. But at least some of the items that are referenced in some of the letters appear to fall under before. And in that sense, they may, you know, there's so little that we can't we can't even tell what subdivision, the damage, the restitution order falls under, and some of them appear not to be rest. They, they are not items for which restitution is available under before. So that that's the problem with the restitution order. Um, well, so the, the loss problem is the same. There's, it's the identical problem. There's not a factual basis in the record. Isn't there a different standard for the loss determination because we've held a reasonable estimate of loss given the available information is sufficient. You're correct, Your Honor. And that is that is true. That is true. And, and in fact, the one thing that the court did do here was he reduced the loss. Because I mean, in a way you can you can, it sort of makes the earlier point, but but you are correct, a reasonable estimate of loss. The problem is even a reasonable estimate has to be based on some evidence, it has to be evidence here. I mean, the government says you have four victim impact statements. And case law says district courts can rely on victim impact statements, they don't need to be sworn. Why was that not reasonable? Actually, the victim impact statements do need to be sworn under SOCI. That's cited in the opening brief. But regardless of that, they, why is it not reasonable? Again, because there's no, because they're summaries, they're conclusionary statements that were ruled inadequate in WACV. And they're not, you know, look, they're, these are big corporations, they have access to which doesn't mean they're not entitled to. Just to clarify, the the victim impact statements only have to be sworn for restitution, right? They don't have to be sworn for estimates of loss under the sentencing guidelines, do they? So Your Honor, I think you're right. And I was referring to SOCI, the restitution point. So I apologize, I mixed those two up. But even, but let me, let me, but let, but going back to loss. When you, there are cases, for example, that talk about a reasonable estimate of loss. And they talk about it where, where evidence isn't available, like in drug cases where sometimes there'll be an estimate based on facts. For example, let me estimate drug quantity. You know, there might be evidence that somebody was selling drugs at a location for a certain number of weeks. And then there's, there's surveillance evidence that indicates they had so many customers, and they can come up with a figure that is the, that is the average sale. And so this court has upheld estimates like that. The problem is here, what you have is you have something that's this many employee hours, and this is our loss. You have another company whose loss ranges from 5 million to 2 million. It's reduced to 1 million by the district court. You just, you just don't know. And you don't know whether loss, even though the, the loss definition is, is in some ways for this statute is broader, like the sentencing guidelines definition of loss for 1030, the, for the computer fraud and abuse statute, is broader than other loss in provisions. We still don't have that factual basis. I don't know if I'm answering your question, Judge. It seems to me like the, the, the difference in standards here makes a big difference because this, for restitution, it's almost like to analogize to, you know, we're not going to you know, these expenses, like if you work for a company, unless you give us receipts, right? Like it's a very, it's pretty specific, like it won't, but that's not what the standard is for loss. The standard for loss, you know, let's assume that it's clear and convincing evidence, but you just have to have clear and convincing evidence. I think the magic number here is 550,000, correct? If it's above 500, if you can, if, if the, if there's clear and convincing evidence that it was above 550,000, we don't actually need to know specifically whether it was 551 or whether it was $5 million, as long as there's clear and convincing evidence that was above 550. And those are two very different standards. Why is that not a correct way of sort of understanding the difference between the two? Well, Your Honor, I would agree that there is a different standard. And I think that, but the difficulty here again, is that there's just no facts. I mean, there's no receipt. I mean, to use my example, I just isn't it. You're right. I think that there's no receipts, so to speak, which is maybe a problem under restitution, but there is a lot of facts. There is a lot of, there was, there's, there was a lot of testimonies. I think you were talking about during your restitution phase about, you know, huge company, LinkedIn, lots and lot, a huge team, uh, working on it for, you know, weeks, you know, you, you, you put any kind of number on those and it's like saying, I don't know exactly how much I spent for lunch, but I ate lunch. And so I know it was more than $5, right? If, you know, if you believe that I ate lunch, you know, it's more than $5. It seems like we're kind of in that land a little bit that it's, it's, uh, with, with, with the facts that were talked about, it's, um, pretty clear that it had to be over 550. It's certainly not clear what that number would be. It's certainly not specific, but why is it not clear enough? There are facts, right? There's some facts in the record here about what happened. There are facts, your honor, but none, none of them are even borderline specific. So what we have is a lot of hours and we have nothing to tie that to value. I think that's right. I think that's right. Why are the letters tying it to value? Well, no, but there are letters specifically saying how much they, uh, how much they spent and providing a, a analysis and the district court, uh, thought that LinkedIn, I guess, was overstated and reduced. Uh, but there certainly are facts and there are specific numbers that are provided by the victims. Right. Except again, there's not, again, I have to turn back to the estimate standard, which is the other part of the estimate in terms of an equation is missing. There's not even any, and look, they could have submitted this under seal, you know, obviously it's private information, but they could have said, you know, this is what we pay our engineers. This is what we pay, you know, for an approximation. What I'm saying is there's not enough for an approximation. I've, I would like to reserve the rest of my time for we'll turn to Ms. Kane. May it please the court, Michelle Kane for the United States. This court should affirm for three reasons. First, the district court did not abuse its discretion in admitting limited evidence of Nicole and subsequent computer intrusion as probative and admissible to prove identity and modus operandi given its common infrastructure with the charge defenses. Second, at sentencing the district court's conservative, discounted loss figure was amply supported by the trial evidence and the victim's supporting statements. Third, that same evidence also established the costs that the victims incurred to uncover and repair the immense damage Nicole caused. The court properly awarded restitution for those losses. I'd like to start by addressing some of the questions that came up during the other side's presentation. Ms. Kane, I know you're going to go through this, but it just struck me that the I'm not, I'm not, I don't know that I've ever seen that and it doesn't make sense to me, but I want to give you an opportunity to talk about when that happens or why that somehow isn't a big red flag. Thank you, your honor. The restitution award in this case did exceed the court's cautionary conservative loss amount that it found for sentencing purposes. But both awards were amply supported by the evidence in the record, including the sworn trial testimony. The victim impact statements that are at issue were just a small part of what the court relied on in coming to that restitution award. And the standard for restitution is clear. It is preponderance of the and the government proved in the court found that the record established the cost that the defendants incurred of the victims incurred to correct the damage and to uncover the damage that the defendant had caused. Where is the amounts for the restitution? Where are those found? That are supported. I mean, it just seems like our case law seems pretty clear that for restitution, more is required. And I'm just trying to figure out where are, how did the district court here land on the amounts that he ultimately ordered for restitution? So the district court made the findings as to restitution based on the proposal by the government and by the probation office in the PSR. And the PSR has been submitted by the government under seal as part of its answering brief here. And the PSR found restitution amounts as outlined in the victim impact statements. The court awarded restitution for the same amounts with the exception of as to LinkedIn, which had had claimed a $2 million cost incurred to respond to the defendant's offenses. And the court instead awarded $1 million. So the court, any variation there was being generous to the defendant. The numbers for the restitution amount all point back to the four letters. And so the question is, because the PSR relied on those letters, are the letters sufficient to be what we've said, to the extent practicable, a complete accounting of the losses? Because they're just conclusory general numbers. So explain how those are enough to meet our standard for determining a restitution amount. So the PSR, and that's at paragraphs 42 to 46, describes or summarizes the statements in the victim impact letters. But the PSR also summarizes in determining the loss, the testimony that was given at trial. And that is sworn testimony, to be clear, in significant detail regarding what each of the victims did to incur the costs that they claimed as restitution. And that extensive trial testimony... The trial testimony doesn't associate any numbers with it. That was my concern. The only numbers I saw in the trial testimony related to what was necessary to prove the $5,000 loss for the indictment, or I think Formspring testified to $15,000. And that's all I saw number-wise. Is that correct? Your Honor, I want to clarify something that came up in the other side's presentation regarding that $5,000 number. So the court is clear, there were actually only two counts charged that required a finding of $5,000 in loss. And that was the violations of 1030A5A as to LinkedIn and Formspring. So both of those companies had witnesses who testified at $5,000 in loss. And in fact, the witness for LinkedIn said that it was significantly more than $5,000 in loss and did put some numbers on it in the sense of the number of employees involved and the time that was allotted to respond to the defendant. So testimony that there were 100 employees involved over approximately six weeks, which is then supported in the victim impact statement. The actual cost though, Ms. Kay, I'm trying to get you to answer Judge Ikuda's question. Where's the evidence of the company's actual costs and expenditures? I know there's a testimony about it and they had spreadsheets, but I don't know that they ever tied that to numbers. And it looks like the victim impact statements were not sworn. Even, I mean, but they don't really provide the numbers, I think that we would be required for restitution. But I wanted to give you an opportunity to tell us otherwise. Well, the victim impact statements were not sworn. That's correct. And this court's holding in SoC, to be clear, was that in that case, there was no sworn affidavit whatsoever. And that just a did not reach the threshold level of adequacy. What we have here are victim impact statements that give some context and put some numbers on what had already been testified to at trial. And in addition to the testimony, there was also evidence that was put in that was actually the products that these companies had put together for their own purposes in determining what had trial exhibits that embodied the work that had gone into the remediation. So a Dropbox said that it had provided a itemization, so to speak, to the government, but that was not produced. Why wasn't that produced? Or what sort of information was rejected? Your Honor, the Dropbox victim impact statement refers to a quote breakdown provided to the government. And first to clarify, that was provided to the defense in discovery. But what was called a breakdown there was something that had been provided far earlier during the actual information to what was contained in the victim impact statement and certainly did not add to the detail that had been provided through the sworn testimony. So there was nothing further in what was referred to in that letter as a breakdown. It was a summary. Can you help me with what the standard of review is on this restitution issue? The opposing counsel says the government does not argue and waive an argument that we should review for plain error. Your Honor, the standard of review is that the court looks de novo at the legality of the restitution award to determine whether it falls within the statutory bounds. And then if it's within the statutory grounds, reviews it for abuse of discretion as to the amount. Now, we stated in our brief that the factual findings underpinning those amounts are reviewed for clear error. It is true, however, that the defense did not make specific objections during the sentencing process, either during the PSR process or in its sentencing memorandum, or at the sentencing to things like specific categories of costs that were incurred, and did not make objections as to whether those fell under, as the defense now argues, sections B-1 or B-4 of the Mandatory Victims Restitution Act. So those issues there as to what categories might be appropriate were not really raised before the district court, and the district court didn't have an opportunity to weigh in on that issue. That is correct. Counsel, can I ask sort of a practical question? You know, we kind of have these different standards for restitution and for the sufficient cost amount for the sentence, the incarceration sentence here. If I was to conclude, if the court was to conclude that there was not specific enough with regard to the restitution amounts and send it back for that, what does that mean with respect to whether or not the sort of $550,000 threshold was met? And what I mean by that specifically is, let's say I was convinced that the $550,000 threshold, there was enough evidence of that, but it would be very awkward if we sent back the restitution, and let's say LinkedIn was like, well, we're done with this case. We don't want to help you anymore. So they don't actually help you get specific enough facts. So then the restitution amount ends up falling underneath the $550,000. You see what I'm saying? Like if the amount you could actually prove specifically enough ended up being underneath $550,000, then at least, I don't know that that necessarily be inconsistent with the sentence here that would be based on over $550,000 because of the different standards, but it would be awkward, I guess, to put a word on it. It would be odd. Is that a problem? Should we just send it all back, or should we, if we think there's a problem with the specific enough proof on the restitution, or should we just only send the restitution amount back? It is not a problem for the awards to be different. This court has that restitution, and the guidelines offense level, and the calculation of a custody time are different. They serve different purposes, and they have different methodologies in addition to being directed at different parties. So the loss amount here was part of the court's determination of the appropriate punishment, the appropriate custodial sentence as to the defendant. And the fact that the court chose to, out of caution, as the court specifically stated, reduce that amount to the defendant's benefit doesn't affect the restitution award, which is directed at making the victims whole. And in many cases, they are two entirely different things. It happens in this case due to the nature of the damage that the defendant caused and the nature of the restitution claim, but they happen to be based on the same facts here. But it's not a problem for them to be different. And if this court were to send the restitution award back for further factual findings, that need not affect the court's calculation of the sentencing guidelines. If there are no further questions on the restitution, I want to briefly address the loss amount more specifically, which is to say that the court was very conservative in calculating its loss amount. But not only did it reduce the loss amount from what the government had proved at $1.7 or $2.7 to $550,000, but it then varied downward significantly in imposing the sentence. So the low end of the guidelines, as the court calculated them, was 97 months. And the court imposed a sentence of 88 months. But that doesn't actually reflect the full variance because there was a 24-month sentence, mandatory concurrent sentence, for aggravated identity theft in there. So really the court, as to the guidelines, varied downward from 97 months to 64 months. And given that, plus the ample evidence supporting the court's award, there was no harm here should there be any question regarding the court's calculation of the sentencing guidelines. If there are no further questions, the government respectfully requests that this court affirm the conviction and the sentence. Thank you. Thank you. Ms. Landau? Thank you, Your Honor. I'd just like to respond to a couple of the points and questions asked of my opponent. So the government has suggested that the claim on restitution that we made, one of the related claims that the restitution award apparently includes items for which restitution are not of plain error because it wasn't made clearly below. First of all, I'd point out that the government waived any plain error argument because they didn't raise it in their answering brief. So that is a waived claim. This court has made clear that these sorts of claims have to be presented or they're lost. The second point is they couldn't really object to the categories. I mean, the statements were so vague that, you know, the loss for restitutionary purposes and for guideline purposes is something that is within the government's grasp. The evidence that would have shown restitutionary loss is something that the victim, the corporate victims have. They have accounting departments. They have the resources to present a full and fair record. And they didn't do that. So, you know. Are you saying this would be a different case if the victims here were private citizens? So that would make a difference for purposes of loss calculation or restitution calculation? No, no, I'm not at all, Your Honor. What I'm saying is that in it, you know, what I'm saying is that if you want restitution or the government wants restitution for a victim, they have to get some victim cooperation to show certain financial losses. And that is the government's burden. And no, I'm not suggesting it would be different. But I am suggesting that in this case, there were a lot of resources available to do that. So anyway, without a sufficient factual basis, it's very difficult to form any adequate objections. And then lastly, I'd just like to address the government's point that even if the loss amount is wrong, it doesn't matter because the sentence was such a significant variation. In fact, the sentence was a small downward variance. The government's point about the consecutive sentence for the aggravated identity theft is not well taken. It is typical in these cases where you have a fraud count along with aggravated identity theft, that the consecutive 24-month term is included. It's all bundled in together. And it's just a technical sentencing matter. And that's what happened here. If there's no further questions, I will submit. Thank you. Thank you, Ms. Landau. Ms. Kane, appreciate your oral argument presentations here this morning. The case of the United States of is submitted.
judges: MURGUIA, IKUTA, VANDYKE